### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

DOMINIC D. ARCHULETA,

        Plaintiff,

           v.                     CASE NO. 3:25-CV-627-CCB-SJF

GAF, et al.,

        Defendants.

### REPORT and RECOMMENDATION
### and
### OPINION and ORDER

      This matter is before the Court on several dispositive and nondispositive motions, beginning with a Motion to Remand filed by *pro se* Plaintiff Dominic D. Archuleta and a Motion to Dismiss for Failure to State a Claim filed by Defendant GAF Materials ("GAF"). These two dispositive motions were referred to the undersigned magistrate judge to prepare a report and recommendation under Fed. R. Civ. P. 72(b)(1) and 28 U.S.C. § 636 on December 10, 2025. [DE 30]. The day after this referral, Mr. Archuleta filed a Motion for Leave to file Seconded Amended Complaint, to which GAF has objected. The undersigned will address Mr. Archuleta's motion to amend as part of the undersigned's inherent authority to rule on nondispositive motions under 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a).

      For the reasons below, the undersigned recommends that (1) Mr. Archuleta's Motion to Remand be denied, and that (2) GAF's Motion to Dismiss for Failure to State a Claim be granted. Moreover, Mr. Archuleta's Motion for Leave to File Second

Amended Complaint will be denied as futile as to the claims alleged against GAF. Finally, with the entry of this Report and Recommendation and Opinion and Order, Mr. Archuleta's Motion for Status will be denied as moot.

## I.    Factual Background

Mr. Archuleta filed his Verified Complaint for Damages in St. Joseph Circuit Court on June 19, 2025. His operative first amended complaint, filed on June 26, 2025, brings state-law claims for defamation, intentional infliction of emotional distress, tortious interference, negligent supervision and retention, false light invasion of privacy, and spoliation of evidence. [DE 21 at 2]. He brings his defamation, intentional infliction of emotional distress, tortious interference, false light invasion of privacy claims, and spoliation of evidence claims against Linda Martinez and her employer, GAF, contending that "GAF is vicariously liable due to [Ms. Martinez's] role and title." [*Id.* at 5]. He brings his negligent supervision and retention claim against GAF directly.

His claims stem from a dispute over a purebred Akita puppy that Mr. Archuleta sold to Ms. Martinez. [*Id.* at 4]. Mr. Archuleta alleges that, sometime after Ms. Martinez bought a puppy from him, she "launched a public campaign of false and malicious defamation targeting [him] in numerous LinkedIn posts and comments, and most recently on the Better Business Bureau (BBB) Platform[.]" [*Id.*]. He contends that Ms. Martinez falsely accused him of fraud, animal abuse, tax evasion, GoFundMe deception, and unethical breeding, referring to him as a "backyard breeder" and a "tax cheat," among other terms. [*Id.*]. Mr. Archuleta contends that Ms. Martinez made these statements while her LinkedIn profile identified her as an "Admin- Area Vice

Presidents Commercial, Residential, Canada, Coatings & Credit at GAF" and that she continues to act as a public representative at GAF— "a roofing and shingle manufacturer and supplier." [DE 18 at 1]. Mr. Archuleta seeks $150,000 in damages because of Ms. Martinez's statements. [DE 21 at 6].

GAF removed the case to this Court on July 18, 2025, stating that it was served on June 25, 2025.[1] GAF's Notice of Removal does not include Ms. Martinez, stating that "Ms. Martinez has not been properly joined and served" and that GAF served its Notice "upon Plaintiff and the state court clerk with a Notice of Removal of Civil Action." [DE 1 at 3, ¶17]. In response, Mr. Archuleta filed a Motion to Remand and Request for Costs Pursuant to 28 U.S.C. § 1447(c), contending that GAF's removal was procedurally defective because (1) Ms. Martinez did not join or consent to removal despite being properly joined and served, and (2) he did not receive timely notice of the removal as required by 28 U.S.C. § 1447(d). GAF opposes Mr. Archuleta's motion contending that Ms. Martinez was not properly joined and served at the time of removal, and that it provided prompt notice of removal under 28 U.S.C. § 1446(d).

Before the Motion to Remand was fully briefed, GAF also moved to dismiss Mr. Archuleta's operative amended verified complaint for failure to state a claim or, in the alternative, for an order requiring Mr. Archuleta to provide a more definite statement of his claims. Mr. Archuleta opposed the motion to dismiss in a response filed on August 4, 2025. Four months after GAF filed the motion to dismiss, however, Mr. Archuleta

---

[1] Mr. Archuleta filed a certificate of service with the St. Joseph Circuit Court on June 27, 2025, that contained USPS tracking numbers for the summons and complaint served on GAF and Ms. Martinez.

moved for leave to amend his complaint, which GAF opposes for the same reasons raised in its motion to dismiss.

The Court addresses each motion in turn, starting with Mr. Archuleta's motion to remand alleging procedural defects with GAF's removal.

## II.    Motion to Remand

### A.    Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing where such action is pending." *See* 28 U.S.C. § 1441(a). Relevant here, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States[.]" 28 U.S.C. § 1332(a)(1). Thus, a case may be removed from a state court to this Court if this Court has jurisdiction over the case and if the removal is done in accordance with certain procedural requirements: requirements for timeliness and consent.

28 U.S.C. § 1446 delineates the procedure for removal. First, removal must be filed within 30 days after the defendant receives a copy of the pleading setting forth claims subject to removal. 28 U.S.C. § 1446(b). Moreover, "all defendants who have been properly joined and served must join in or consent to the removal of the action." *Id.* § 1446(b)(2)(A). *See also Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997) ("[A]ll served defendants still have to support the petition in writing, i.e., sign it."). Finally,

"[p]romptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State Court." *Id.*

Any "doubts regarding removal are resolved in favor of the plaintiff's choice of forum in state court." *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013). Accordingly, the removing party bears the burden of proving removal is proper. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004).

## B.    Discussion

As stated, Mr. Archuleta contends that GAF's removal was procedurally defective because (1) Ms. Martinez did not join or consent to removal despite being properly joined and served, and (2) he did not receive timely notice of the removal as required by 28 U.S.C. § 1447(d). GAF contends that Ms. Martinez was not properly served at the time of removal and that it provided prompt notice of removal.

### 1.    Lack of Consent from Ms. Martinez

Mr. Archuleta first challenges GAF's ability to remove the case without Ms. Martinez consenting or joining in the removal. Indeed, a removal that is "filed by less than all of the named defendants is considered defective if it fails to contain an explanation for the absence of co-defendants." *N. Ill. Gas Co. v. Airco Indus. Gases*, 676 F.2d 270, 272 (7th Cir. 1982); *see also Welborn v. Ethicon Inc.*, No. 2:22-CV-92-PPS-JPK, 2022 WL 17600302, at *3 (N.D. Ind. Dec. 12, 2022), *report and recommendation adopted*, No. 2:22-CV-92 PPS-JPK, 2023 WL 22161 (N.D. Ind. Jan. 3, 2023). In response, GAF contends

that Ms. Martinez was not properly joined or served at the time of removal, so her consent was not required.

GAF's Notice of Removal states this. [*See* DE 1 at 2, fn. 1]. Moreover, in response to Mr. Archuleta's motion, GAF explains that Mr. Archuleta's certificate of service shows that he served Ms. Martinez—an Illinois citizen—at GAF's corporate headquarters in New Jersey. [DE 24 at 3, citing DE 10 at 3; DE 10-1 at 7]. GAF contends that this is not proper service; thus, Ms. Martinez was not a defendant "properly joined and served" under 28 U.S.C. § 1446(b)(2)(A).

Whether Mr. Archuleta's properly served Ms. Martinez before GAF's removal is governed by Indiana law. *Perea v. Dominguez*, No. 2:12-CV-6-RLM-APR, 2012 WL 1095231, at *1 (N.D. Ind. Mar. 29, 2012). Likewise, Fed. R. Civ. P. 4(e) also points to state law, stating that an individual

> may be served in a judicial district of the United States by:
> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
> (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;
>     [or]
>     (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e). Indiana Rule of Trial Procedure 4.1(A) specifies methods of service upon individuals, and accordingly, dictates the methods for proper service here. *See Directbuy, Inc. v. Next Level Mktg., Inc.*, No. 2:09 cv 84, 2010 WL 4386525, at *1 (N.D. Ind. Oct. 28, 2010).

Indiana Trial Rule 4.1(A) authorizes the service upon individuals by:

(1) **sending a copy of the summons and complaint by registered or certified mail** or other public means by which a written acknowledgment of receipt may be requested and obtained **to his** residence, **place of** business or **employment with return receipt requested and returned showing receipt of the letter**; or
(2) delivering a copy of the summons and complaint to him personally; or
(3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or
(4) serving his agent as provided by rule, statute or valid agreement.

*Id.* (emphasis added).

Here, Mr. Archuleta served a copy of the summons and complaint on Ms. Martinez by certified mail to GAF's corporate headquarters in Parsippany, New Jersey, and to GAF's Indiana registered agent in Indianapolis. [DE 10-1 at 6; DE 27-1 at 8-9, 11, 16-19]. Accordingly, "Indiana Trial Rule 4.1(A)(1) controls" here. *Freeman v. Carter*, No. 3:20-CV-631 JD, 2021 WL 4146999, at *3 (N.D. Ind. Sept. 13, 2021). The issue, then, is whether Mr. Archuleta complied with Ind. R. Trial P. 4.1(A)(1) such that Ms. Martinez is considered a defendant properly served under 28 U.S.C. § 1446(b)(2)(A).

As GAF contends, "[t]he Seventh Circuit has interpreted the phrase 'place of business or employment' in the context of service of process under Indiana Trial Rule 4.1(A)(1) such that a plaintiff must serve a defendant at a location where he actually reports for work.'" *Freeman*, 2021 WL 4146999, at *3 (citing *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003)). But Mr. Archuleta served a copy of the summons and complaint on Ms. Martinez via certified mail to GAF's Corporate Headquarters in New Jersey. [DE 10-1 at 6; DE 27-1 at 8-9, 11, 16-19]. Yet both parties have stated that Ms. Martinez is an

7

Illinois citizen. [DE 21 at 3, ¶II.3.; DE 1 at 1]. Moreover, in response to Mr. Archuleta's motion to remand, GAF included an affidavit stating that Ms. Martinez did not report for work at the corporate headquarters in New Jersey. [DE 24-1 ¶¶5-6]. Thus, the Court can only find that Mr. Archuleta failed to serve Ms. Martinez at her "place of business or employment" as interpreted by this Court. *Id.* at *4.

Still, Mr. Archuleta contends that service was made under Indiana Rule of Trial Procedure 4.6(A) and that "GAF was aware of Ms. Martinez's involvement." [DE 27 at 3]. Ind. R. Trial P. 4.6(A) provides that:

> Service upon an organization may be made as follows:
> (1) In the case of a domestic or foreign organization upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent.
> (2) In the case of a partnership, upon a general partner thereof.
> (3) In the case of a state governmental organization upon the executive officer thereof and also upon the Attorney General.
> (4) In the case of a local governmental organization, upon the executive thereof and upon the attorney for the local governmental organization.
> (5) When, in subsections (3) and (4) of this subdivision, a governmental representative is named as a party in his individual name or in such name along with his official title, then also upon such representative.

Ind. R. Trial. P. 4.6(A). But Ms. Martinez is an individual person, not an organization, so while these provisions dictate how service could be made upon GAF through an agent, they do not apply to Ms. Martinez or show that GAF is her agent for service.

Mr. Archuleta also appears to suggest that GAF's notice of this lawsuit is the same as Ms. Martinez having notice—or that GAF otherwise should have notified her—but that isn't so. While not explicitly cited by Mr. Archuleta, it is true that Indiana R. Trial P. 4.16(B) states that

> Anyone accepting service for another person is under a duty to:

> (1) promptly deliver the papers to that person;
> (2) promptly notify that person that he holds the papers for him; or
> (3) within a reasonable time, in writing, notify the clerk or person making the service that he has been unable to make such delivery of notice when such is the case.

*See* Ind. R. Trial P. 4.16(B). But this has been construed "to mean anyone with authority to accept service for another person." *Norris v. Pers. Fin.*, 957 N.E.2d 1002, 1008 (Ind. Ct. App. 2011)(citing *LaPalme v. Romero*, 621 N.E.2d 1102 (Ind.1993)). Indiana Trial Rule 4.1(A)(4) provides such authority to an individual's "agent as provided by rule, statute or valid agreement." No such authority has been presented here, so the Court has nothing on which to find that this rule applies. Moreover, Mr. Archuleta provided copies of pre-litigation correspondence from GAF where GAF stated that it believed the dispute was "wholly unrelated to GAF" and where GAF confirmed it was not representing Ms. Martinez shortly after he filed this case. [DE 27-1 at 7; DE 10-1 at 18].

In sum, the Court cannot find that Ms. Martinez has been properly served[2], so the Court cannot find that her consent was required before removal. *See In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002)(finding that a defendant's "consent to removal was not required" because it had not "been *properly served*")(emphasis in original).

### 2.    Timing of Notice of Removal to Mr. Archuleta

Mr. Archuleta also contends that GAF's notice contravened 28 U.S.C. § 1446(d), maintaining that he did not receive "timely or proper" notice of removal from GAF. In

---

[2] Mr. Archuleta has not argued that he tried to serve Ms. Martinez through any other means.

9

response, GAF first disputes the language used by Mr. Archuleta, maintaining that §

1446(d) requires "prompt" notice of removal, not timely. Indeed, § 1446(d) states

> Promptly after the filing of such notice of removal of a civil action the
> defendant or defendants shall give written notice thereof to all adverse
> parties and shall file a copy of the notice with the clerk of such State court,
> which shall effect the removal and the State court shall proceed no further
> unless and until the case is remanded.

28 U.S.C. § 1446(d). GAF also states that Mr. Archuleta's motion to remand was filed

just four days after removal. Still, GAF concedes that while a Notice of Removal was

filed in state court the same day it was removed here, a file stamped copy of the Notice

of Removal filed here was not attached to the notice filed in state court. GAF explains

that the file stamped copy was filed by the time of its response brief on August 6, 2025.

But Mr. Archuleta contends that this 19-day delay was untimely, warranting remand.

"28 U.S.C. § 1446 does not provide a statutory definition for 'promptly.'" *Hahn v.*

*Allstate Ins. Co.*, No. 1:22-CV-02016-MG-TWP, 2022 WL 22890738, at *1 (S.D. Ind. Dec.

19, 2022). Indeed, "other courts have found delays of significant length insufficient to

warrant remand." *Id.* (finding 24-day delay insufficient for remand) (citing *Nixon v.*

*Wheatley*, 368 F. Supp. 2d 635 (E.D. Tex. 2005) (22-day delay in filing notice of removal in

state court insufficient for remand); *Calderon v. Pathmark Stores, Inc.*, 101 F. Supp. 2d 246,

246-48 (S.D.N.Y. 2000) (36-day delay insufficient for remand); *Whitney v. Wal-Mart*

*Stores, Inc.*, 2004 WL 1941345, at *1 (D. Me. Aug. 31, 2004) (six-month delay

insufficient)). "[W]here a defendant has made a good faith effort to provide notice and

the plaintiff has not been prejudiced by a delay in providing notice to a state court, 'the

requirements of section 1446(d) are sufficiently fulfilled to effect removal.'" *Neurology &*

*Pain Mgmt. Assocs., P.C. v. Bunin*, No. 116CV02856LJMMPB, 2017 WL 82512, at *4 (S.D. Ind. Jan. 10, 2017) (internal citations omitted).

Mr. Archuleta alleged no prejudice in his initial motion, however, in his "Notice Regarding Service Attempts, Removal Discovery, and Supplemental Factual Clarification with Affidavit and Exhbits"—which the undersigned construes as his reply in support of remand—Mr. Archuleta states that he did not receive formal service of the Notice of Removal and that he only learned of the removal through his own review of the state court's docket. [DE 25 at 1-2, ¶¶1-3]. Mr. Archuleta maintains that this lack of notice "materially prejudiced [him] by impairing his ability to timely respond or object to removal." [*Id.* at 2, ¶4]. In his supplemental filing[3], Mr. Archuleta further explains that GAF's failure to file notice until August 6, 2025, "is significant because it represents the point at which the state court proceedings were formally halted under 28 U.S.C. §1446(d). Until that date, [he] had to continue monitoring both the state and federal dockets to avoid missing critical deadlines or filings." [DE 27 at 2].

These arguments are unavailing for two reasons. First, despite Mr. Archuleta's claims that this delay impacted his ability to object to removal, his Motion to Remand was filed just four days after removal. Moreover, the state court also did not take any action after GAF filed its initial incomplete notice of removal. *Hahn*, 2022 WL 22890738, at *1 ("The Indiana Court has not taken any action in relation to this litigation since the Notice was filed in this Court on October 14, 2022, [so] Plaintiff has not been prejudiced

---

[3] The Court granted Mr. Archuleta leave to submit this supplemental filing on September 30, 2025, [DE 28] and accordingly has considered the information in that filing here.

in any way by the Indiana Court receiving effective notice on November 7, 2022.). Thus, the Court finds that GAF has sufficiently satisfied 28 U.S.C. § 1446(d) to effect remand.

In sum, the Court finds that GAF has met its burden to show that its removal was proper. *Boyd*, 366 F.3d at 529. Accordingly, the Court will recommend that Plaintiff's Motion to Remand be denied.

### III.    GAF's Motion to Dismiss

GAF contends that Mr. Archuleta's claims against it must be dismissed because Ms. Martinez's "personal grievances against [Mr. Archuleta] were in no way connected to her employment with GAF, nor did she make the comments within the scope of her employment." [DE 18 at 2]. In response, Mr. Archuleta contends that he plausibly alleged vicarious liability "based on [Ms.] Martinez's use of her GAF title, professional email address, and lack of corrective action from GAF after notice." [DE 20 at 2].

### A.    Legal Standard

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Still, "[e]ven though courts liberally construe their filings, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires a complaint to contain a 'short

and plain statement of the claim showing that the pleader is entitled to relief.'" *Green v. Aldi Inc.*, No. 25-CV-840-PP, 2025 WL 2171848, at *2 (E.D. Wis. July 31, 2025).

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a complaint by challenging the legal sufficiency of a claim. *See Hallinan v. Fraternal Ord. of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In reviewing a motion to dismiss under Rule 12, the court must accept the allegations as true and draw all reasonable inferences in favor of the plaintiff. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.* at 662. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly, 550 U.S. at 545.* Indeed, a complaint that offers "labels or conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Therefore, while "[l]egal conclusions can provide a complaint's framework, [] unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim." *Ledford v. Williams*, No. 1:18-CV-337-HAB, 2019 WL 5727909, at *6 (N.D. Ind. Nov. 5, 2019) (citing *Iqbal*, 556 U.S. at 680). Determining the plausibility of a claim is context specific and the court must draw on its own "experience and common sense." *Iqbal*, 556 U.S. at 663-64.

13

## B.    Discussion

### 1.    Choice of Law

GAF's Motion to Dismiss begins by addressing choice-of-law questions, ultimately contending that Indiana law applies to all of Mr. Archuleta's claims. [DE 18 at 4]. Mr. Archuleta agrees that Indiana law applies to his claims. [DE 20 at 5]. Thus, the Court will consider his claims accordingly. *See also Land v. Yamaha Motor Corp.*, 272 F.3d 514, 516 (7th Cir. 2001) ("A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits.").

### 2.    GAF's Vicarious Liability

Mr. Archuleta brings the following claims against GAF under a theory of vicarious liability: defamation, intentional infliction of emotional distress, tortious interference, false light invasion of privacy claims, and spoliation of evidence. Indiana law provides that "vicarious liability will generally be imposed upon an employer ... where the employee has inflicted harm 'while acting within the scope of employment.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008)). An act is considered to be within the scope of employment when the employer assigns the action or the conduct incidental to it to the employee, or the act "to an appreciable extent[ ] further[s] the employer's business." *Barnett*, 889 N.E.2d at 284 (citations omitted). On the other hand, an "*independent course of conduct* not intended by the employee *to serve any purpose of the employer*" is considered outside the scope of employment. *Id.* (quoting Restatement (Third) of Agency, § 7.07(2) (2006)). Thus, for his claims based on vicarious liability to survive GAF's motion to dismiss, Mr.

14

Archuleta must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence supporting [his] allegations that these comments were actually within the scope of employment." *Kass-Hout v. Cmty. Care Network Inc.*, No. 2:20-CV-441-JPK, 2021 WL 3709635, at *12 (N.D. Ind. Aug. 20, 2021)(internal quotations and citations omitted).

Mr. Archuleta's operative amended complaint [DE 21] alleges that Ms. Martinez "launched a public campaign of false and malicious defamation targeting [him] in numerous LinkedIn post and comment threads" and that she did so while her LinkedIn profile identified her as an "Admin – Area Vice Presidents Commercial, Residential, Canada, Coatings & Credit at GAF" [*Id.* at 2]. Mr. Archuleta thus contends that she was "acting in that capacity on LinkedIn and elsewhere[4] during all relevant events." [*Id.* at 3]. Accordingly, Mr. Archuleta contends that "GAF is vicariously liable due to her role and title." [*Id.* at 5]. Mr. Archuleta further alleges that he served three legal notices on GAF regarding these statements, but "GAF has failed to issue any retraction, corrective action, or disavowal of [Ms.] Martinez's conduct." [*Id.*]. Mr. Archuleta contends that Ms. Martinez has instead "double downed" on her comments while "using her GAF-linked identities." [*Id.*]

These statements, even when construed liberally, are insufficient to plausibly state a claim that Ms. Martinez was acting within the scope of her employment when she posted her comments about Mr. Archuleta on LinkedIn. As stated, to find that an

---

[4] Despite this statement, Mr. Archuleta does not allege that Ms. Martinez included her GAF employment information when she made comments on the BBB website.

employee acted within the scope of her employment, Courts consider whether (1) "the employee's act was authorized by the employer," (2) the employee's act was "'incidental to the conduct authorized [by the employer,]" or (3) whether the act, "'to an appreciable extent[ ] further[ed] the employer's business.'" *City of Indianapolis v. West*, 81 N.E.3d 1069, 1072 (Ind. Ct. App. 2017)(internal citation omitted). "[M]any egregious or otherwise criminal acts, and many intentional torts generally, can hardly be said to be authorized by an employer. . . ." *Id.* at 1072. (internal citations and quotations omitted).

Mr. Archuleta first alleges that GAF is vicariously liable for Ms. Martinez's statements because she made them through her LinkedIn profile identifying her as a GAF employee[5]. "However, the mere use of her employer's facilities d[oes] not bring her act within the scope of her employment." *Id.* at 1075. This principle has been considered in contexts beyond an employee's use of her employer's physical facilities. *See Id.* (finding that an employee's personal email sent from her work email address was outside scope of her employment). Thus "[i]t has long been settled that mere use of the employer's facilities to commit a wrongful act . . . do not without more present a sufficient nexus to merit decision by the fact-finder." *Id.* at 1074 (internal citations omitted).

Still, vicarious liability may attach if there is ""some minimal nexus between the employee's work and the facts of the case." *Harrison Cnty. Sherriff's Dep't v. Ayers*, 70 N.E.3d 414, 418 (Ind. Ct. App. 2017), *trans. denied*. Here, however, Ms. Martinez's

---

[5] Mr. Archuleta does not allege that her comments on the BBB website included her GAF employment information.

statements were about a puppy she purchased from Mr. Archuleta for her own personal use. Although her LinkedIn profile showed that she was an employee of GAF when she made these statements, GAF is "a manufacturer of roofing materials". Thus, it is not plausible that statements made on LinkedIn about Mr. Archuleta's dog breeding business and a puppy she purchased furthered GAF's business manufacturing roofing materials or were otherwise related to her employment duties for GAF. *Ayers*, 70 N.E.3d at 418; *West*, 81 N.E.3d at 1075 ("The question is not whether the employer's facilities were used, but what the facilities were used *for*, and whether such use was sufficiently associated with the employee's ordinary employment use."). Thus, without more, the Court cannot find that the facts alleged by Mr. Archuleta "raise a reasonable expectation that discovery will reveal evidence supporting [his] allegations that these comments were actually within the scope of [Ms. Martinez's] employment." *Kass-Hout*, 2021 WL 3709635, at *12 (internal quotations and citations omitted).

Mr. Archuleta also argues that he plausibly stated a claim for GAF's vicarious liability by alleging that GAF ratified Ms. Martinez's statements by "fail[ing] to issue any retraction, corrective action, or disavowal of [Ms.] Martinez's conduct." [DE 27 at 5]. "Ratification occurs when a party affirms 'a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" *Cunningham v. Foresters Fin. Servs., Inc.*, No. 2:17-CV-77-TLS, 2022 WL 683649, at *4 (N.D. Ind. Mar. 8, 2022)(internal citations omitted). "An act is ratified when the party manifests assent or otherwise engages in conduct that would reasonably imply consent, such as by knowingly accepting the benefit of an agent's action." *Id.* Mr. Archuleta alleges no

17

conduct by GAF that plausibly implies their consent to the conduct. Moreover, there are no facts from which the Court can reasonably infer that GAF accepted benefits from Ms. Martinez's statements, especially given the disconnect between the substance of her comments—a puppy—and GAF's business—roofing materials.

Accordingly, the undersigned will recommend that Mr. Archuleta's claims against GAF based on a theory of vicarious liability—his claims of defamation, intentional infliction of emotional distress, tortious interference, false light invasion of privacy claims, and spoliation of evidence—be dismissed.

### 3.    Negligent Supervision and Retention

Together with his claims alleging vicarious liability, Mr. Archuleta brings a claim of negligent supervision and retention against GAF. "Negligent retention and supervision is a species of negligence and has the following elements: 1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the employer's breach." *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009). Accordingly, "negligent supervision, retention and training may impose liability on an employer when an employee acts beyond the scope of his or her employment to commit a tortious injury upon a third party." *Perron v. JP Morgan Chase Bank, N.A.*, No. 1:12-CV-01853-TWP, 2014 WL 931897, at *5 (S.D. Ind. Mar. 10, 2014). Mr. Archuleta contends that this cause of action is independent of his *respondeat superior* claims [DE 20 at 4], and he is correct. "A cause of action based on negligent hiring, training and supervision is appropriate only where it is alleged that the employee acted outside the scope of his or her employment; otherwise 'the doctrine of *respondeat*

*superior* provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment.'" *Id. (quoting Tindall v. Enderle*, 162 Ind. App. 524, 320 N.E.2d 764, 768 (Ind. Ct. App. 1974).

> At the outset, Mr. Archuleta's operative amended complaint explicitly states that
>
> Defendant Linda Martinez is a resident of Illinois an employee of GAF, holding the public-facing title 'Admin-Area Vice Presidents – Commercial, Residential, Canada, Coatings & Credit at GAF' and was acting in that capacity on LinkedIn and elsewhere during all relevant events.

[DE 31 at 3, ¶II.3]. But "a claim of negligent failure to supervise must contain allegations that the employee[] acted outside their scope of employment." *Johnson v. S. Bend Cmty. Sch. Corp.*, No. 3:17-CV-00825-PPS, 2018 WL 2336072, at *6 (N.D. Ind. May 22, 2018). Moreover, Mr. Archuleta does not address how he can "recover on alternative causes of action requiring contradictory conclusions." *D5 Iron Works, Inc. v. Loc. 395 Ironworkers, AFL-CIO*, No. 2:16CV200-PPS/JPK, 2022 WL 59539, at *14 (N.D. Ind. Jan. 5, 2022)(addressing the plaintiff's claims based on *respondeat superior* and failure to supervise).

In any event, in support of this claim, Mr. Archuleta merely alleges that GAF failed to "take disciplinary or corrective action" against Ms. Martinez after receiving formal notice of her actions. [DE 21 at 5, ¶5]. Without more, the Court cannot find that this terse allegation alone "raises a right to relief above the speculative level" or moves "the claim[] from conceivable to plausible." *Twombly*, 550 U.S. at 545; *Ledford*, 2019 WL

5727909, at *6. Thus, the undersigned will also recommend that this claim against GAF be dismissed and that GAF's Motion to Dismiss be granted.[6]

## IV.    Mr. Archuleta's Motion for Leave to File Second Amended Complaint

Mr. Archuleta filed his Motion for Leave to File Second Amended Complaint on December 11, 2025. His proposed second amended complaint alleges defamation, false light, and tortious interference with business expectancy against both Defendants (with GAF vicariously liable for Ms. Martinez's actions), and negligent supervision and retention against GAF. Mr. Archuleta explains that the proposed amended complaint "clarifies factual allegations with specific quotations, dates, platforms, audiences, and attached exhibits; incorporates captured LinkedIn posts, comments, and direct messages; and *adds particularized agency, ratification, and negligent supervision facts as to GAF.*" [DE 31 at 1 (emphasis added)]. GAF objects to Mr. Archuleta's motion, primarily contending that his second proposed amended complaint is futile as to Mr. Archuleta's allegations against it.

### A.    Legal Standard

A party may amend his pleadings once as a matter of course 21 days after serving it or in response to a motion to dismiss. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may only amend his pleading by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). A court should freely grant leave to amend, but

---

[6] This recommendation applies to Mr. Archuleta's allegations as they apply to GAF only, as that is the basis for GAF's motion to dismiss. This does not address the sufficiency of his allegations as to Ms. Martinez because no such concerns are before the Court.

that "do[es] not mandate that leave be granted in every case." *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002). A court may deny a plaintiff leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Fed. R. Civ. P. 15(a)(2)*; *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment is futile when it reasserts a claim already decided by the court, restates facts from the original complaint using different language, fails to state a valid theory of liability, or could not survive a motion to dismiss. *Westbrook v. Archey*, No. 1:05-CV-00057, 2006 WL 44207, at *1 (N.D. Ind. Jan. 9, 2006) "[T]he decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

B.    **Discussion**

1.    **Mr. Archuleta's Claims Based on Vicarious Liability**

In his proposed second amended complaint, Mr. Archuleta brings three claims against GAF under a theory of vicarious liability: defamation, false light, and tortious interference with business expectancy. [DE 31-1 at 5-6]. In his proposed second amended complaint, Mr. Archuleta again alleges that Ms. Martinez made "a series of false statements published on a LinkedIn profile that displayed her GAF title and branding." [DE 31-1 at 1, ¶1]. Mr. Archuleta thus states that, because her "LinkedIn profile displayed her GAF title and branding at the time of publication, [it] create[ed] apparent authority and affiliation recognizable to readers." [*Id.* at 3]. Mr. Archuleta

contends that he provided notice to both Defendants, but the publications persisted and were not retracted. [*Id.* at 4, ¶4]. Mr. Archuleta also contends that "GAF exercised control over public-facing communications and maintained employee conduct and social-media policies.  Upon information and belief, GAF knew or reasonably should have known of [Ms.] Martinez's publications and failed to direct a retraction, discipline, or other corrective action, thereby ratifying the publications." [*Id.* at 4, ¶15]. Thus, Mr. Archuleta alleges that "GAF is liable under respondeat superior because [Ms.] Martinez acted within the scope of her employment and/or with apparent authority, and liable by ratification because GAF knew or should have known of the publications and failed to take corrective action." [*Id.* at 5, ¶20].

As stated above, under Indiana law "vicarious liability will generally be imposed upon an employer ... where the employee has inflicted harm 'while acting within the scope of employment.'" *Zander*, 907 F.3d at 959 (7th Cir. 2018) (quoting *Barnett, 889 at 283*). An act is considered to be within the scope of employment when the employer assigns the action or the conduct incidental to it to the employee, or the act "to an appreciable extent[ ] further[s] the employer's business." *Barnett, 889 N.E.2d at 284* (citations omitted). On the other hand, an "*independent course of conduct* not intended by the employee *to serve any purpose of the employer*" is considered outside the scope of employment. *Id.* (quoting Restatement (Third) of Agency, § 7.07(2) (2006)).

The Court cannot find that these allegations against GAF would survive a motion to dismiss, even when liberally construed. First, as discussed above, Ms. Martinez's LinkedIn profile bearing her GAF position is not enough to state a plausible

claim that Ms. Martinez was in the scope of her employment, as "the mere use of her employer's facilities did not bring her act within the scope of her employment." *West,* 81 *N.E.3d at 1074.* He now also alleges that ""GAF exercised control over public-facing communications and maintained employee conduct and social-media policies." [DE 31 at 4, ¶15]. While it is undoubtedly true that GAF exercises control over public-facing communications, Mr. Archuleta does not allege that GAF had control over Ms. Martinez's LinkedIn or that her account was used by GAF as a public-facing communication. Moreover, as to the latter portion of this allegation, "[t]he critical inquiry is not whether an employee violates his employer's rules[,]" but whether the "employee's act originated in activities so closely associated with the employment relationship as to fall within its scope." *West,* 81 N.E.3d at 1073 (quoting *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.,* 686 N.E.2d 102, 105 (Ind. 1997)). Without more, the Court cannot find that the proposed second amended complaint alleges sufficient facts to plausibly state a claim that Ms. Martinez acted in the scope of her employment.

Mr. Archuleta also alleges that GAF is liable because it ratified her actions because "GAF knew or should have known of the publications and failed to take corrective action." [DE 31-1 at 5, ¶20]. As discussed above, "[r]atification occurs when a party affirms 'a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.'" *Cunningham,* 2022 WL 683649, at *4 ("An act is ratified when the party manifests assent or otherwise engages in conduct that would reasonably imply consent, such as by knowingly accepting the benefit of an agent's action." *Id.* But Mr. Archuleta alleges no facts that GAF took any actions that manifested

their assent to her comments or actions that would reasonably imply their consent to her actions. For instance, as GAF contends, Mr. Archuleta did not allege that GAF's company profile "publish[ed], endorse[ed], lik[ed], shar[ed] or comment[ed] on any of [Ms.] Martinez's comments." [DE 32 at 8, ¶39]. With gaps in his allegations, Mr. Archuleta's claims based on ratification would not survive a motion to dismiss.

Finally, Mr. Archuleta now explicitly alleges liability based on apparent authority. "[A]pparent authority 'is the authority that a third person reasonably believes an agent to possess because of some manifestation from his principal.'" *SelectSun GmbH v. Porter, Inc.*, 338 F. Supp. 3d 905, 920 (N.D. Ind. 2018), *aff'd*, 928 F.3d 550 (7th Cir. 2019)(quoting *Sword v. NKC Hosp., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999). "The principal must make the manifestation to a third party, either directly or indirectly, and the manifestation must reasonably cause the third party to believe that an individual is an agent of the principal and act upon that belief." *Id.* Here, Mr. Archuleta alleges no facts that GAF took any action toward him that made it appear that Ms. Martinez had authority to make posts on GAF's behalf. For instance, as GAF contends, Mr. Archuleta did not allege that GAF's company profile "publish[ed], endorse[ed], lik[ed], shar[ed] or comment[ed] on any of [Ms.] Martinez's comments." [DE 32 at 8, ¶39]. With gaps in his allegations, Mr. Archuleta's claims based on apparent authority would not survive a motion to dismiss.

### 2. Negligent Supervision and Retention

Mr. Archuleta also brings a negligent supervision and retention claim directly against GAF. As stated, "[n]egligent retention and supervision is a species of negligence

and has the following elements: 1) a duty of care owed by an employer to a third person; 2) breach of that duty; and 3) injury to the third person proximately caused by the employer's breach." *Scott*, 916 N.E.2d at 257. As to this claim, Mr. Archuleta alleges that "GAF knew or should have known of [Ms.] Martinez's conduct and failed to supervise, train, or discipline her, proximately causing [his] harm." [DE 31-1 at 6, ¶27]. But, as stated above, "a claim of negligent failure to supervise must contain allegations that the employees acted outside their scope of employment." *Johnson*, 2018 WL 2336072, at *6. Like his operative amended complaint, Mr. Archuleta's proposed second amended complaint is premised on the contention that Ms. Martinez was acting within the scope of her employment because she made the statements on her LinkedIn profile where her GAF employment is listed. Moreover, it remains unclear how Mr. Archuleta can "recover on alternative causes of action requiring contradictory conclusions." *D5 Iron Works, Inc.*, 2022 WL 59539, at *14 (addressing the plaintiff's claims based on *respondeat superior* and failure to supervise). In any event, his allegations—that "GAF knew or should have known of [Ms.] Martinez's conduct and failed to supervise, train, or discipline her, proximately causing [him] harm" appear to be no more than "a formulaic recitation of the elements of [this] cause of action." *Twombly, 550 U.S. at 555*. With only "threadbare recitals of [this] cause of action's elements, supported by mere conclusory statements" the Court cannot find that this claim would survive a motion to dismiss[7]. *Iqbal*, 556 U.S. at 678.

---

[7] Like the Court's recommendation on GAF's motion to dismiss, this Order on Mr. Archuleta's Motion to Amend addresses the claims alleged against GAF only.

## V.    Conclusion

For these reasons, pursuant to 28 U.S.C. § 636(b)(1)(B) and the Court's referral on December 10, 2025 [DE 30], the undersigned **RECOMMENDS** that

- Plaintiff's Motion to Remand [DE 10] be **DENIED**, and that

- Defendant GAF's Motion to Dismiss for Failure to State a Claim be **GRANTED**. [DE 17].

As to the two above recommendations,

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

Moreover, pursuant to 28 U.S.C. § 636(b)(1)(A), the undersigned now also

- **DENIES** Plaintiff's Motion for Leave to File Second Amended Complaint [DE 31], and

- **DENIES AS MOOT** Plaintiff's Motion for Status on Ruling Regarding Motion to Remand. [DE 29].

**SO ORDERED** this 23rd day of January 2026.

s/Scott J. Frankel
Scott J. Frankel
United States Magistrate Judge